149 So. 439

**DICKSON ICE CREAM CO. v. KNIGHT et al.**

No. 31868.

May 29, 1933.

Rehearing Denied July 7, 1933.

Alexander & Alexander and Joseph H. Levy, all of Shreveport, for appellants.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for J. W. Peyton.

O'NIELL, Chief Justice.

This suit was brought to determine whether Will Knight and Matt Knight, or J. W. Peyton, should receive payment for 27 rent notes, for $325 each, which were held by Peyton, and which the Dickson Ice Cream Company owed either to him or to the Knights. The notes were the remaining unpaid notes of a series of 60 notes, given by the ice cream company to the Tensas Securities Company, on the 13th of April, 1928, to represent the monthly rental of a building which the Tensas Securities Company leased to the ice cream company for five years. The 60 rent notes were delivered in pledge to J. W. Peyton by C. C. Brooks, representing the Tensas Securities Company, at the time the notes were issued, to secure the payment of a debt which the Tensas Securities Company owed to J. W. Peyton, and to secure also an additional indebtedness which was then contemplated. Will and Matt Knight claim title to the remaining 27 rent notes by virtue of their buying the leased premises from the Tensas Securities Company, on the 28th of January, 1931, in consideration of the cancellation of a mortgage on the property, securing a loan of $27,500, which the Knights had made to the Tensas Securities Company on the 18th of February, 1929. In answer

to this proceeding, the Knights disputed Peyton's right of pledge, and contended, first, that Peyton was never the pledgee but only the trustee of the notes; second, that Brooks had no authority from the Tensas Securities Company to pledge the notes; third, that the notes were not negotiable, and therefore could not be pledged without notice to the maker, which was not given; and, fourth, that, if Peyton had a valid pledge of the notes, he surrendered it by giving up possession of the notes to a bank and agreeing that $200 a month from the payments of the notes should be applied to the reduction of the debt of $27,500 which the Tensas Securities Company owed to Will and Matt Knight. The district judge decided that Peyton had a valid pledge of the notes to secure the payment of $5,097.95, with legal interest. Will and Matt Knight have appealed from the decision.

■■ The evidence is conclusive that the notes were delivered to Peyton in pledge, and not merely in trust, at the time when the notes were issued. They were thus pledged pursuant to a previous agreement between the Tensas Securities Company and Peyton, to secure a loan which he made to the company, and to secure also an additional indebtedness which was contemplated. Brooks, who attended to the negotiations for the Tensas Securities Company, attended to all of the financial transactions of the company, and whatever he did as the representative of the company was ratified, either expressly or tacitly, by the officers and directors of the company. The 60 rent notes were actually delivered to Peyton as soon as they were signed and delivered by the ice cream company to the Tensas Securities Company. The ice cream company was informed in advance that the rent notes were to be pledged to Peyton; and, on the 17th of April, 1928, four days after the date of the notes, Peyton sent the ice cream company a copy of the lease, in a letter informing the company of the name of the bank at which the notes would be placed for collection. It is a matter of no importance whether the rent notes were negotiable or nonnegotiable. They were made payable to the order of the maker, and were endorsed in blank by the maker when they were issued; hence they were transferable, in pledge or otherwise, by mere delivery. Baldwin Realty Co. v. Interstate Trust & Banking Co., 172 La. 749, 135 So. 228. We agree with the finding of the district judge that the maker of the notes had notice of the pledge to Peyton, and that the pledge was a valid one.

■■ We agree with the district judge also in his finding that Peyton did not surrender his pledge of the notes when he consented that $200 per month, out of the payments, should be applied otherwise, and that only $125 per month should be applied to the debt which the Tensas Securities Company owed him. When Will and Matt Knight agreed to make the loan of $27,500 to the Tensas Securities Company, they demanded that the company should take out 200 shares of stock in the Shreveport Mutual Building Association, and pledge the stock to the Knights as additional security for the loan. It was stipulated also in the contract between the Knights and the Tensas Securities Company that, if the company should fail in its obligation to pay $200 per month on the 200 shares

of stock in the building association, the $27,-500 mortgage note would become due and collectible. To facilitate the transaction, Peyton consented that, out of the $325 to be collected monthly for the rent notes which he held in pledge, $200 per month should be paid to the building association on the Tensas Securities Company's 200 shares of stock. The bank in which Peyton had placed the notes for collection was therefore instructed by him to pay $200 per month to the building association, and to credit only $125 per month to the account of Peyton, out of the monthly payments of the rent notes. That was done for several months, until the bank failed. Peyton then took the notes out of the defunct bank and placed them in another bank in Shreveport, with the same instructions about the disposition to be made of the collections. That bank carried out the instructions regularly until Will and Matt Knight took over the leased premises from the Tensas Securities Company in satisfaction of the $27,500 mortgage debt. Peyton then took the position that his agreement to contribute $200 per month to the payments for the building association stock, out of the proceeds of the rent notes that were pledged to him, had served its purpose, because the obligation of the Tensas Securities Company to pay $200 per month on the building association stock for the security of the loan from Will and Matt Knight was at an end. Peyton therefore retained the remaining unpaid rent notes in pledge to secure the debt which the Tensas Securities Company owed him. We agree with the district judge that Peyton had the right so to do.

The judgment is affirmed.