KLEES, Judge.
This matter involves a dispute between Hibernia National Bank in New Orleans (hereinafter “Hibernia”) and First National Bank of Commerce, New Orleans, Louisiana (hereinafter “FNBC”) over a certificate of deposit (the “CD”) issued by Hibernia to Ciro P. Callico, Sr. or Florence D. Callico (collectively, the “Callicos”). Both Hibernia and FNBC were creditors of the Callicos by virtue of loans extended by the banks to them and both Hibernia and FNBC assert that each has a superior security right to the proceeds of the CD. Judgment was rendered in favor of FNBC and against Hibernia in the amount of $25,000, plus interest and costs. Hibernia appeals, we affirm.
Hibernia appeals, alleging that:
1) The trial judge erred in failing to recognize the prior rights of Hibernia, as pledgee, to the funds represented by the CD.
2) The trial judge erred in failing to recognize the compensation which took place by operation of law and pursuant to which the funds on deposit represented by the CD offset a portion of the indebtedness of the Callicos to Hibernia.
3) The trial judge erred in failing to consider the CD was a non-negotiable instrument.
FACTS
Hibernia is the payee and holder of a certain promissory note executed by the Callicos dated February 14, 1980 in the principal sum of $1,334,383.88, payable on demand. The note provides that it shall be secured by “every balance of deposit account which the parties hereto and any one or more of them may at any time have with said Bank.” It further states:
“. .. unless this note be paid at its maturity, or when otherwise due, as herein provided, all money on deposit with, held by, in possession of or under control of Bank for any purpose whatsoever, to the credit or for the account of any of the parties hereto or any one or more of them shall be and stand applied forthwith to *571 the payment of this note or any other indebtedness to the Bank by the parties hereof or any of them.”
On February 14, 1980, the Callicos executed a Pledge Agreement in favor of Hibernia which provides in pertinent part that their debt shall be secured by:
“... all other securities and/or property of every nature whatsoever that may now or hereafter be in transit to or from Bank or be delivered or left in possession or under the control of Bank (alone or with others) by the undersigned or any one or more of them, for any purpose whatsoever ... and every balance of deposit account the undersigned and any one or more of them may at any time have with the bank.”
In February, 1980, FNBC extended credit to Mr. Callico in the principal sum of $70,-000.00. This debt was evidenced by a promissory note, executed by Callico, which was dated February 14, 1980, and scheduled to mature on May 14, 1980. This debt was secured by Certificate of Deposit No. 95041 in the face amount of $25,000 which had been issued by Hibernia to “Ciro Callico, Sr., or Florence Callico”. The maturity date of the Certificate was May 1, 1980. Certificate No. 95041 was one of a series of certificates of deposit issued by Hibernia to the Callicos, the earliest of which was issued on June 1, 1979.
On May 1, 1980, the Callicos renewed Certificate No. 95041 which was at that time replaced with Certificate No. 101330, with a maturity date of October 30, 1980. The word “non-negotiable” was written on the face of the certificate. On the same date, as collateral for the $70,000.00 loan from FNBC and for all extensions and renewals of that loan, Mr. Callico executed an instrument entitled “Pledge and Assignment of Time Savings Certificate or Certificate of Deposit” which reads as follows:
“For value received, the undersigned hereby pledges, assigns, transfers, hy-pothecates and sets over unto First National Bank of Commerce, New Orleans, Louisiana, its successors or assigns, time savings certificate or certificate of deposit together with all proceeds now or hereafter payable therefrom, and hereby irrevocably constitute and appoint First National Bank of Commerce, New Orleans, attorney in fact to notify issuer of this assignment.
CERTIFICATE PLEDGED
CERTIFICATE NO. DATE AMOUNT ISSUED BY
101330 5/1/80 $25,000 Hibernia Bank”
Also on May 1,1980, FNBC forwarded to Hibernia an instrument entitled “Acknowl-edgement of Pledge and Assignment” which contained the following statement:
“The Pledge and Assignment by Ciro Cal-lico, Sr. to First National Bank of Commerce of a Time Saving Certificate or Certificate of Deposit is hereby acknowledged by us.
CERTIFICATE PLEDGED
CERTIFICATE NO. DATE AMOUNT
101330 5/1/80 $25,000
We confirm the likeness of the specimen signature below with our records.”
This document was signed and returned by the head clerk of Hibernia’s C.D. Department.
On May 14, 1980, when the note evidencing the loan matured, FNBC permitted Cal-lico to pay $2,300.00 plus interest and to renew the loan by means of a 90-day note in the principal sum of $67,600.00. On August 13, 1980, at the maturity of the renewal note, FNBC allowed Callico to renew the loan once more.
On October 30, 1980, the date on which the Certificate of Deposit matured, FNBC presented the Certificate, the original pledge and assignment of the certificate, and Hibernia’s acknowledgement of the pledge and assignment and requested payment of the funds represented thereby. Hibernia denied the request informing FNBC that it was setting off the principal and interest accrued on the Certificate in partial satisfaction of the debts owed by the Calli-cos to Hibernia.
On October 31, 1980, FNBC made a written demand on Hibernia for redemption of the Certificate of Deposit, and Hibernia refused to comply.
*572 On November 6, 1980, FNBC filed suit against Hibernia seeking payment of the principal sum of the Certificate of Deposit plus accrued interest and costs incurred in bringing the action. Both parties filed Motions for Summary Judgment. Judgment was rendered in favor of FNBC and against Hibernia.
In his Reasons for Judgment, the trial judge stated as follows:
“Inasmuch as the Court is of the opinion that Civil Code Article 2212 is applicable to the undisputed facts of this case, the Motion for Summary Judgment filed by Hibernia National Bank in New Orleans is denied, and the Motion for Summary Judgment filed by First National Bank of Commerce is granted.”
Hibernia asserts that Article 2212 of the Louisiana Civil Code, is not applicable to the facts of the case. LSA-C.C. art. 2212 provides:
“The debtor, who has accepted purely and simply the transfer which a creditor has made of his right to a third person, can no longer oppose to the latter the compensation which, before the acceptance, he might have opposed to the former. As to the transfer which has not been accepted by the debtor, but which has been notified to him, it hinders only the compensation of credits posterior to that notification.”
They assert that the transaction between Mr. Callico and FNBC regarding the Certificate of Deposit constituted a pledge rather than an assignment, that Hibernia’s right of pledge covering the Certificate of Deposit is superior to the rights asserted by FNBC, and that the Certificate of Deposit was a non-negotiable instrument which, as such, was not subject to assignment.
Hibernia argues that its right to offset arises from the promissory note itself as well as from the Pledge Agreement executed in conjunction with the note. It bases this contention on Montaldo Insurance Agency, Inc. v. Culotta, 153 So.2d 899 (La.App. 4th Cir.1963). There the court found the depositor corporation had validly pledged its savings and checking accounts in the bank to secure a loan by the bank to the corporation although there was no actual delivery to the bank, because the bank already had possession of the accounts. L.S.A.-C.C. article 3152 provides:
“It is essential to the contract of pledge that the creditor be put in possession of the thing given to him in pledge, and consequently that actual delivery of it be made to him, unless he has possession of it by some other right.”
The court held that this situation fell within the exception to the delivery requirement. Thus where the bank already had possession of the deposits, there was no need to make the actual delivery which otherwise would have been required.
This logic should not apply to a situation where a certificate of deposit is involved. If Hibernia had intended to include the funds in question in the general pledge, it should have obtained possession of the certificate itself. For a pledge of funds represented by a certificate of deposit to be valid, possession of the certificate is essential. Peoples Bank and Trust Company, Natchitoches v. Harper, 370 So.2d 1291 (La.App. 3rd Cir.1979). Although the bank did have possession of the funds, it was at fault in not taking possession of the certificate, as it is the holder thereof who has constructive possession of those funds.
Hibernia argues that because it had a valid pledge of the deposits of the Calli-cos, compensation occurred, reducing the indebtedness of the Callicos to Hibernia by the face amount of the Certificate of Deposit. However, compensation may only occur between debts that are equally liquidated and demandable. Hartley v. Hartley, 349 So.2d 1258 (La.1977), L.S.A.-C.C. art. 2209.
In Federal Deposit Ins. Corp. v. Page, 195 So. 629 (La.App. 2nd Cir.1940), the Court held that, under Article 2209, an unmatured certificate of deposit was not a liquidated and demandable debt subject to be set-off against an overdue promissory note. Thus Hibernia could not have the right to set off the funds represented by the certificate of *573 deposit against the Callico’s indebtedness until October 30,1980, the maturity date of the certificate.
The trial court found that Hibernia lost any right to offset as L.S.A.-C.C. Article 2212 applies to the facts of this case. Hibernia argues that this is not correct because the instrument executed by Callico on May 1,1980 in favor of FNBC was a pledge rather than an assignment.
Appellant cites Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956), where the court, in recognizing that there is a difference between a pledge and an assignment, held that a vesting of title in the transferee is essential to an assignment.
We note that the fact that the instrument executed by Callico was entitled “Pledge and Assignment” is irrelevent to this determination. The use of the word “assignment” does not mandate a finding that the instrument was an assignment and not a pledge. Naquin v. The American Bank of Luling, 347 So.2d 332 (La.App. 4th Cir.1977). On the other hand, if the word “pledge” is used in the instrument, the security transaction is not invalid as an assignment. American Bank & Trust v. Louisiana Sav. Association, 386 So.2d 96, (La.App. 3rd Cir.1980).
Hibernia contends that the certificate of deposit could not be transferred because it was non-negotiable and non-negotiable instruments are unassignable, and that title to the funds represented by the certificate of deposit remained with the Callicos. The first argument is erroneous because a certificate of deposit, even if nonnegotiable, can be assigned. State Bank v. Centra] Mercantile Bank, 248 N.Y. 428, 162 N.E. 475 (1928).
The second argument warrants discussion. Appellant cites People Bank and Trust Company, Natchitoches v. Harper, 370 So.2d 1291 (La.App. 3rd Cir.1979) to support the proposition that the instrument in question was a pledge rather than an assignment. In that case, the debtor obtained a loan from the bank, and in conjunction therewith agreed to convey a security interest in a savings certificate issued by a savings and loan association. The maker of the note did not have the certificate in her possession at the time the loan was made, thus it was never given to the bank. At that time, the maker signed a document entitled “Assignment of Savings/Time Deposit Account” which provided:
“This assignment shall be a continuing one and shall be effective for any renewals of above loan until same is entirely paid; and shall operate as security for payment of any other debts or liabilities of the undersigned to you now in existence or hereafter contracted.
You are hereby authorized to charge against the above account, any note or notes representing unpaid balance of above loans at maturity or thereafter, with interest and costs, if not otherwise paid.”
The instrument was sent to the Savings and Loan, and its Secretary-Treasurer signed an acknowledgment at the bottom of the instrument and returned it. Subsequently, the debtor presented the savings certificate at the Savings and Loan and made a withdrawal on the account. The court held in favor of the Savings and Loan, finding that the bank had no interest in the funds in the account because an assignment had not been made. The court stated “A careful examination of the instrument in this case shows that the rights granted by it were no greater than those granted to a pledgee under Civil Code Article 3157. The bank had no right to the funds until after the loan matured and was not otherwise paid. The bank errs in its assertion that it “owned” the funds held by the Savings and Loan.” In holding Dauzat v. Simmesport State Bank, 167 So.2d 681 (La.App. 3rd Cir.1964) in applicable, it added “In Dauzat v. Simmesport State Bank, 167 So.2d 681 (La.App. 3rd Cir.1964), payments due under a construction contract were assigned, giving the assignee a present right to receive the funds and apply them to the indebtedness.”
*574 The court determined that the bank had attempted to perfect a pledge but failed because it did not have the requisite possession of the pledged property, the certificate.
FNBC claims that an assignment of a security right took place, thus Article 2212 does apply. In American Bank & Trust, supra, the Court held the assignment in question, although it may have failed “to fulfill all the technical requirements of a true assignment or transfer of credit, rights or claims (principally in failing to unconditionally pass title), such an assignment may serve as a security device.” The court concluded, “A contract of security may be in the form of a sale.” (at 105)
The Court based its holding on Dauzat, supra, which had approved the use of an assignment as a security device. In that case, Gremillion entered into a construction contract with Atlas Construction Company. To finance his operations, he borrowed money from Simmesport State Bank and assigned to the bank all payments he was entitled to receive from Atlas under the construction contract. Dauzat, who was paid by .check for work he had done for Gremillion, placed the check with the bank for collection.
As the bank received payments from Atlas pursuant to the assignment, it applied them to the balance of Gremillion’s secured notes. Plaintiff Dauzat asserted that these funds should have been placed in Gremil-lion’s checking account in order for Dau-zat’s check to be paid.
The court in Dauzat found that the bank had obtained the assignment as security for the loans it had made to Gremillion. The court applied Article 2642 and Article 2645 of the Louisiana Civil Code which state:
“Article 2642. In the transfer of credits, rights' or claims to a third person, the delivery takes place between the trans-ferrer and the transferree by the giving of the title.”
“Article 2645. The sale or transfer of a credit includes everything which is an accessory to the same; as suretyship, privileges and mortgages.”
It determined that the assignment executed by Gremillion to the bank had the effect of transferring to the bank the ownership of the funds paid to it by Atlas, at least until Gremillion’s indebtedness to the bank had been fully satisfied. The Court found the bank was not prohibited from enforcing its security, i.e., the assignment, and applying the proceeds towards the payment of the loan, even though the bank may have been the collecting agent for another creditor of the borrower. In discussing the transaction in Dauzat the court in American Bank & Trust, supra, stated, “The ownership assigned was security for a loan. Under the circumstances it is clear that the assignment was conditional, that is, conditioned upon Gremillion not having repaid his loan prior to the payment of funds due Gremillion by Atlas to the Simmesport State Bank.”
The court in American Bank distinguished People’s Bank and Trust Company, Natchitoches v. Harper, supra, by noting that it had found therein that a pledge rather than an assignment was intended, while in the case before it the intent of the parties was to effect an assignment for security purposes. Thus the general rule for determining what type of instrument was executed by Callico to FNBC is to focus on the parties’ intent.
In arguing that an assignment was intended, FNBC asserts that the August 13, 1980 renewal of Callico’s loan was conditioned upon its reduction by the amount of the certificate of deposit plus the interest accrued on it on the certificate’s maturity date. The only evidence of this condition, however, is in appellee’s brief. Nevertheless, the factual circumstances indicate that at least an assignment of the certificate of deposit as security for FNBC’s loan to Calli-co was contemplated. The assignment of the certificate transferred to FNBC the ownership of the certificate and the right to the funds represented thereby, at least until Callico’s debt to FNBC had been paid. FNBC had possession of the certificate of deposit hence Callico no longer had control of the funds or any authority to collect them when the certificate matured. Such *575 an assignment would serve to invoke the application of Article 2212.
In the ease at bar, compensation did not and could not have occurred prior to the acknowledgment of May 1, 1980. Thus applying Article 2212 and the interpretations thereof to the facts of the case, although Hibernia may have had the right to set off the debts, they lost any such right by failing to indicate in the acknowledgment any claim to the funds represented by the Certificate of Deposit.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be borne by defendant-appellant.
AFFIRMED.