884 So.2d 688 (2004)
BG WIRE ROPE & SLINGS, INC., Jimmy Lee Dyson and Rock Energy
v.
Tommy DYSON, Kurt L. Charpentier and Continental Steel Products, Inc.
No. 2003 CA 2390.
Court of Appeal of Louisiana, First Circuit.
September 17, 2004.
Rehearing Denied November 9, 2004.
*689 Jeffry L. Sanford, Baton Rouge, Bertha M. Hillman, Thibodeaux, Counsel for Plaintiff/Appellant Rock Energy.
Kenneth F. Tamplain, Jr., Robert N. Markle, New Orleans, Counsel for Defendants/Appellees Tommy Dyson and Kurt L. Charpentier.
Before: WHIPPLE, FITZSIMMONS, and DOWNING, JJ.
FITZSIMMONS, J.
Plaintiff, Rock Energy, Inc. (Rock Energy), appealed the trial court's dismissal of its suit to revive a judgment. We affirm.
To obtain a loan for $103,206.11, BG Wire Rope & Slings, Inc. (BG) entered into an agreement with Community Bank of Lafourche (bank) dated September 3, 1992 and entitled "ASSIGNMENT OF JUDGMENT." The agreement included the following three paragraphs:
As additional security for the payment of the aforesaid notes in principal, interest, and attorney fees, and the performance of all obligations of assignor, and in accordance with its obligations, assignor does hereby transfer, assign, set over and deliver unto Community Bank of Lafourche, its heirs, successors or assigns, all of its rights, titles, and interests in and to, and in any and all sums due and owing either now or in the future, which assignor has against Tommy C. Dyson, Kurt L. Charpentier, and Continental Steel Products, Inc. by virtue of that certain judgment rendered in the matter entitled "BG Wire Rope & Slings, Inc. and Jimmy L. Dyson vs. Tommy Dyson, Kurt Charpentier, and Continental Steel Products, Inc.[,]" No. 101,982 of the docket of the 32nd Judicial District Court, in and for the Parish of Terrebonne, State of Louisiana, a copy of which is attached hereto and made part hereof for greater reference.
And, said assignor hereby authorizes and directs [the debtors on the 1992 judgment], and/or the Sheriff of the Parish of Terrebonne by virtue of any writ of seizure and sale, their heirs, successors and assigns, to make any payments due and owing under said judgment to Community Bank of Lafourche, and said Community Bank of Lafourche is fully authorized to give receipt in its own *690 name and in the name of Assignor for all such payments.
All sums of money paid to the aforesaid assignee representing payments due pursuant to said judgment shall be applied by Assignee upon the payment of the above referenced promissory notes of BG Wire Rope & Slings, Inc.
The judgment noted in the "Assignment of Judgment" was rendered in June of 1992.
On June 25, 2002, Rock Energy, Inc. filed a "Petition to Revive Judgment" against Tommy Dyson, Kurt Charpentier, and Continental Steel Products, Inc., the debtor-defendants named in the 1992 judgment. In the petition, Rock Energy alleged that it was a holder in due course of the 1992 judgment. Rock Energy claimed to have acquired the 1992 judgment by an assignment from BG in March of 1994. Two of the named defendants in this suit, and in the 1992 judgment, Tommy Dyson and Kurt Charpentier, filed a peremptory exception raising the objection of no right of action. Mr. Dyson and Mr. Charpentier argued that BG had already assigned the judgment to the bank in September of 1992, and thus, BG had no right to assign the same judgment to Rock Energy in 1994. In May of 1997, the bank assigned the 1992 judgment to Mr. Dyson and Mr. Charpentier. On June 12, 1997, BG filed a pleading entitled "Satisfaction of Judgment," which stated that the 1992 judgment had been fully paid. To defeat the claim of Mr. Dyson and Mr. Charpentier to the 1992 judgment, which allegedly led to BG's filing of the satisfaction of judgment, Rock Energy argued that the September, 1992 "Assignment of Judgment" to the bank was only a pledge or posting of additional security for the loan made to BG. Therefore, BG had the right to assign the 1992 judgment to Rock Energy in 1994.
The issue considered at the hearing on the exception of no right of action was the proper characterization of the September 3, 1992 document entitled, "Assignment of Judgment." After reading the document, the trial court found that the words, "As additional security," did not derogate from the more apparent intent of the parties exemplified by the following clause: "assignor does hereby transfer, assign, set over and deliver unto Community Bank of Lafourche, its heirs, successors or assigns, all of its rights, titles, and interests in and to, and in any and all sums due and owing either now or in the future ...." Thus, BG held no rights or title in the judgment that could be transferred or assigned to Rock Energy in 1994.
On November 20, 2002, the trial court rendered a judgment granting the defendants' exception of no right of action and dismissed Rock Energy's suit to renew the 1992 judgment. Rock Energy filed a motion for new trial based on an affidavit by Richard Bouterie, the attorney who prepared the 1992 assignment of judgment to the bank. The trial court found that the affidavit was not newly discovered evidence. When asked by the court why Rock Energy did not submit the affidavit as evidence during the trial on the exception, counsel for Rock Energy stated that he believed that the intent of the document was clear from the words, "As additional security." Therefore, counsel argued, he did not realize that the intent of the document would be at issue. The trial court apparently disagreed and denied the motion for new trial.
Rock Energy appealed and asserted two assignments of error.[1] In the first assignment, *691 Rock Energy argues that the trial court erred in its grant of the exception of no right of action based on its finding that the document was a transfer for value rather than a mere security device. Secondly, Rock Energy protests the trial court's refusal to allow introduction of the affidavit at the hearing on the motion for new trial.
The peremptory exception raising the objection of no right of action tests whether the plaintiff has a real and actual interest in the suit. Sivils v. Mitchell, 96-2528, p. 3 (La.App. 1 Cir. 11/7/97), 704 So.2d 25, 27; see La. C.C.P. art. 927 A(5). Evidence may be admitted to support or controvert the exception of no right of action. La. C.C.P. art. 931.
An assignment of an asset as payment, and the pledging or offering of security to be held until a loan is paid, are not the same transaction and do not produce the same consequences. An assignment transfers title of the asset to the assignee, who then has the immediate right, upon signing of the agreement, to pursue payment of the loan from the assigned asset. With a pledged asset, the creditor must wait until the debtor defaults on the loan before the asset may be used for payment. However, use of particular terms within an agreement, such as "additional security" or pledge, does not alone characterize the agreement or invalidate a finding that the agreement was an assignment. Mahayna, Inc. v. Poydras Center Associates, 96-2089, p. 4 (La.App. 4 Cir. 4/30/ 97), 693 So.2d 355, 357, writ denied, 97-1741 (La.10/13/99), 703 So.2d 619.
After a thorough review of the record, we cannot say that the trial court erred in its finding that the document was an assignment, and not merely the granting of additional security or a pledge. We rely on the same language highlighted by the trial court and the two paragraphs that followed. The document clearly transfers and assigns to the bank, and its assignees, all of BG's "rights, titles, and interests," to sums due, "now or in the future," under the 1992 judgment. The bank was "fully authorized to give receipt in its own name and in the name of the Assignor for all such payments" made under the judgment and applied to BG's bank loan. As in Mahayna, the creditor, in our case the bank, had the "immediate right" to collect, and was not required by the agreement to wait until BG defaulted on the loan before any assets recoverable under the 1992 judgment could be used for repayment. Mahayna, 96-2089 at pp. 5-6, 693 So.2d at 358. We agree with the trial court's reasoning that the use of the words "additional security" cannot alone overcome the plain meaning of the document read in toto. Based on a reading of the document as a whole, the 1992 judgment, although referred to as "additional security," was actually assigned to the bank, and its "assigns," as a source for payment of the loan at the time of the transfer and in the "future." Without a valid assignment from BG, Rock Energy had no actual interest in this suit to renew the 1992 judgment. See Sivils, 96-2528 at p. 3, 704 So.2d at 27. Thus, the exception of no right of action was properly granted.
"A new trial shall be granted, upon contradictory motion of any party," if "the party has discovered, since the trial [or evidentiary hearing], evidence important to the cause, which he could not, with due diligence, have obtained before or during" the evidentiary hearing or *692 trial. La. C.C. P. art. 1972(2). "A new trial may be granted ... if there is good ground therefor ...." La. C.C.P. art. 1973. A decision on a motion for new trial rests within the trial court's discretion. See Burris v. Wal-Mart Stores, Inc., 94-0921, p. 6 (La.App. 1 Cir. 3/3/95), 652 So.2d 558, 561, writ denied, 95-0858 (La.5/12/95), 654 So.2d 352. Although an interlocutory judgment, such as a denial of a motion for new trial, is not generally appealable, it is subject to review by an appellate court when an appealable judgment is rendered in the same case. Bailey v. Robert V. Neuhoff Limited Partnership, 95-0616, pp. 3-4 (La.App. 1 Cir. 11/9/95), 665 So.2d 16, 18, writ denied, 95-2962 (La.2/9/96), 667 So.2d 534.
Under the facts here, we find no error or abuse of discretion in the trial court's denial of Rock Energy's motion for new trial. The intent of the parties to the agreement at issue was clearly placed before the trial court. The information contained in the affidavit was available to both parties before the hearing on the exception of no right of action, and does not qualify as newly discovered evidence. See La. C.C.P. art. 1972(2). Nor does a post-judgment attempt to submit additional evidence, on an issue that was before the court, provide a sufficiently "good ground" for the grant of a new trial. See La. C.C.P. art. 1973.
For these reasons, we affirm the judgment. The costs of the appeal are assessed to the plaintiff-appellant, Rock Energy.
AFFIRMED.
DOWNING, J., dissents and assigns reasons.
DOWNING, J., dissenting and assigning reasons.
Respectfully, I dissent from the majority opinion. I conclude that Rock Energy has a right of action in this matter and that the trial court committed legal error in sustaining the exception. The September 1992 "Assignment of Judgment," when read as a whole, unambiguously shows that the assignment of the judgment was an accessory contract of some sort. See La. C.C. art. 1913: "A contract is accessory when it is made to provide security for the performance of an obligation." See also La. R.S. 10:1-201: "`Security Interest' means an interest in personal property or fixtures, created by contract, which secures payment or performance of an obligation."
The Assignment of Judgment at issue clearly states that BG Wire Rope and Slings, Inc. is "justly and truly indebted unto Community Bank of Lafourche, ... in the principle sum of ... ($103,206.11) Dollars, represented by Assignors two certain promissory notes as follows, to wit[.]" (Emphasis added.) The Assignment of Judgment then lists two promissory notes totaling the exact amount of the debt.
The instrument then assigns the judgment at issue "[a]s additional security for the payment of the aforesaid notes... in accordance with its (sic) obligations...." (Emphasis added.) The assignment further provides that all payments made to Commerce Bank pursuant to the judgment shall be applied to payment of the promissory notes.
To interpret this Assignment of Judgment as transferring title to the judgment at issue could give Community Bank of Lafourche a double recovery on BG Wire's indebtedness. Community Bank could be paid in full on the notes and still be the owner of a judgment allegedly valued at more than $198,000. The unambiguous language of the document states that this is not the intended result of the parties. *693 The judgment is assigned to provide security for the payment of the promissory notes. And the language giving Community Bank the right to collect payments under the judgment, though strongly worded, is clearly qualified by the statement that the assignment is provided as additional security for payment of the notes.
Further, security for a discrete obligation should be released once the secured obligation is paid. See Baton Rouge Wood Products, Inc. v. Ezell, 194 So.2d 372 (La. App. 1 Cir.1966) for the proposition that generally a mortgage, and presumably any accessory device given as security for specific indebtedness, is canceled and extinguished upon payment of the indebtedness. Therefore, Commerce Bank's interest in the judgment should terminate if the promissory notes are paid according to their terms.
The majority relies on the Fourth Circuit case, Mahayna Inc. v. Poydras Center Associates, 96-2089 (La.App. 4 Cir. 4/30/97, 693 So.2d 355), in support of its conclusions. While this case is analogous in many respects, I respectfully suggest that it was wrongly decided or at least should be limited to its facts. See David Willenzik, Louisiana Secured Transactions, Appendix 2. UCC Article 9 Case Law (1999) § 4, Personal Observations. This article states: "The appeals court was correct in holding in favor of Whitney [Bank], but did so for the wrong reasons." It continued, "Clearly, the parties intended that the assignment of Mahayna's interest in its lawsuit against Poydras be given as security for Hayne's ... loan to Haywilk, which loan was made for the benefit of Mahayna. As such, the transaction was a `security interest' under La UCC 1[-]201(37) and a secured transaction subject to Louisiana UCC Article 9. The Appeals Court erred in not recognizing this fact." (Emphasis added.) The article's final observation was that, "[t]he Mayhayna [decision] is the first case decided by a Louisiana Court that incorrectly interpreted and applied the provisions of Louisiana UCC Article 9. Whitney did not appeal this decision to the Louisiana Supreme Court in that Whitney was the prevailing party even though the Appeals Court was wrong in its legal holding."
Further, the assignment in Mayhayna provided that the assignor retained the authority to assign any amount received pursuant to its assigned cause of action against Poydras Center Associates in excess of the amounts due on the loan. Mayhayna, 96-2089, p. 3, 693 So.2d at 356-57. Accordingly, this assignment could not be completely translative of ownership.
Therefore, we should not follow the Fourth Circuit opinion in Mayhayna and we should recognize that the Assignment of Judgment at issue was a security device, not a transfer of full ownership in the judgment.
Rock Energy claims its right of action through a second assignment from BG Wire in March 1994. This assignment of the judgment by BG Wire assigns its right, title and interest to Rock Energy "without warranty of title" for consideration of $100.00 and other good and valuable consideration.
Defendants claim their ownership of the judgment by a different assignment from the Community Bank of Lafourche in May 1997 for consideration of $40,000. This assignment does not mention or reference the status of the secured promissory notes, although this document states that payment is given "in satisfaction of the payment of the indebtedness owed to Community Bank ...." After receiving the assignment of the judgment, defendants had a document filed in the public *694 record declaring that the judgment was satisfied.
The fact that Community Bank transferred its interest in the judgment to the defendants without also transferring the notes secured thereby raises several interesting questions, the answers to which are not apparent from the record: were the notes paid or not; was there another agreement between BG Wire and Commerce Bank authorizing the bank's subsequent transactions; if the debt on the note was compromised, why wouldn't the security have been released absent judicial proceedings or other agreement?
Nonetheless, from the record it appears that Rock Energy possesses an ownership interest in the judgment. Accordingly, it has a right of action under the assignment from BG Wire to pursue the relief it seeks, revival of the judgment at issue. I therefore disagree with the majority opinion.
I note that the basis for the original exception of no right of action was that Rock Energy, as a juridical person, had no authority to file a petition on its own behalf. The trial court did not address this issue in its judgment, and I make no comment on the merits of this argument.
NOTES
[1] In its brief, Rock Energy states that the appellees, Mr. Dyson and Mr. Charpentier, wrongfully acquired control of BG, and committed other wrongful acts in their dealings with BG and Rock Energy. However, those claims were not at issue in the hearing on the exception of no right of action and are not before this court.